**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

JERONE MCDOUGALD,                                    Case No. 1:18-cv-80

    Plaintiff,

                                     Barrett, J.
      vs.                                             Bowman, M.J.

JEREMY EACHES, *et al.,*

    Defendants.

### REPORT AND RECOMMENDATION

## I.    Background

Plaintiff Jerone McDougald, an inmate who filed at least 25 cases in this Court while incarcerated at the Southern Ohio Correctional Facility ("SOCF"), once again proceeds pro se and *in forma pauperis* in this lawsuit.[1]  Although Plaintiff has now earned "three strikes" for filing numerous frivolous lawsuits, which precludes him from filing new lawsuits without prepaying the full filing fee in the absence of showing "imminent danger," he initiated this lawsuit prior to earning his third strike.[2]  *See generally,* 28 U.S.C. §

---

[1] On June 10, 2019, Plaintiff reported that he is now incarcerated in the Toledo Correctional Institution ("TCI"), which is located in the Northern District of Ohio.  In addition to the above-captioned case, Plaintiff's prior cases in this district include: Case Nos. 1:08-cv-744 (closed); 1:11-cv-790 (closed), 1:16-cv-317 (closed); 1:16-cv-497 (closed); 1:16-cv-500 (closed); 1:16-cv-565 (closed); 1:16-cv-633 (closed); 1:16-cv-900 (closed); 1:16-cv-1099 (closed); 1:17-cv-72 (closed); 1:17-cv-91 (closed); 1:17-cv-95 (closed); 1:17-cv-124; 1:17-cv-127 (closed); 1:17-cv-196 (closed); 1:17-cv-464 (closed); 1:18-cv-93; 1:18-135 (closed); 1:18-cv-498 (discussing three-strikes bar); 1:18-cv-523 (closed, discussing three-strikes bar); 1:19-cv-50 (closed); 1:19-cv-107; 2:16-cv-545 (closed), 2:19-cv-257 (closed).

[2] Despite initiating suit, Plaintiff failed to submit service copies of his complaint and did not do so until being twice ordered to do so – an event that occurred *after* he had earned his "third strike." *See McDougald v. Stone,* Case No. 1:17-cv-72 (Docs. 5, 17. 20, 26, 27) (final R&R adopted on 3/13/18, dismissing case for failure to state a claim upon which relief may be granted); *McDougald v. Sammons,* Case No. 1:17-cv-91 (Docs. 7, 10, 11) (R&R adopted on 3/15/18, dismissing case for failure to state a claim upon which relief may be granted); *McDougald v. Ahmad,* Case No. 1:16-cv-500 (Dlott, J., Bowman, M.J.) (S.D. Ohio Apr. 28, 2016) (Docs. 27, 34, 35) (R&R adopted on 9/8/17, dismissal for judgment on the pleadings for failure to state a claim). Aside from noting the ambiguity created by Plaintiff's failure to submit service copies until after earning his third strike, the undersigned will assume at this juncture that *in forma pauperis* status was properly granted.

1915(g) (provision of the Prison Litigation Reform Act setting forth the "three strike" criteria).

Plaintiff is equally prolific in his motion practice, filing multiple motions in each case, as well as virtually identical motions in multiple cases. (*See* Doc. 28, R&R at 2, recounting Plaintiff's history).  In the instant case, Defendants have moved for summary judgment. (Doc. 36).  Plaintiff filed both responsive memoranda and two cross-motions seeking summary judgment, along with a motion seeking a default judgment.  (Docs. 38, 40, 52). For the reasons stated below, the undersigned now recommends that Defendants' motion for summary judgment be granted, that Plaintiff's motions be denied, and that this case be dismissed.

## II.  Standard of Review

Federal Rule of Civil Procedure 56(a) provides that summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A dispute is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505 (1986).  A court must view the evidence and draw all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348 (1986).  The moving party has the burden of showing an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S. Ct. 2548 (1986).

Once the moving party has met its burden of production, the nonmoving party cannot rest on the pleadings, but must present significant probative evidence in support

of his case to defeat the motion for summary judgment. *Anderson*, 477 U.S. at 248-49. The mere scintilla of evidence to support the nonmoving party's position will be insufficient; the evidence must be sufficient for a jury to reasonably find in favor of the nonmoving party. *Id.* at 252. As Plaintiff is a pro se litigant, his filings are liberally construed. *Spotts v. United States*, 429 F.3d 248, 250 (6th Cir. 2005). However, his status as a pro se litigant does not alter his burden of supporting his factual assertions with admissible evidence when faced with a summary judgment motion. *Maston v. Montgomery Cnty. Jail Med. Staff Personnel*, 832 F. Supp. 2d 846, 851-52 (S.D. Ohio 2011) (citing *Viergutz v. Lucent Techs., Inc.*, 375 Fed. Appx. 482, 485 (6th Cir. 2010)).

The undersigned has evaluated each of the parties' respective motions for summary judgment according to the above standards of review, and has construed all reasonable factual inferences in Plaintiff's favor.

### III. Analysis

### A. Judicial Notice of Similar Claims in Prior Cases

Prior to turning to the specific facts at issue, the undersigned takes judicial notice of the fact that Plaintiff has filed at least 11 other cases containing similar allegations. In those cases as in this one, Plaintiff has alleged that various SOCF officials used excessive force against him when they deployed OC pepper spray,[3] and exhibited deliberate indifference to his serious medical needs by failing to provide treatment following the use of OC spray, in violation of the Eighth Amendment. *Compare, e.g., McDougald v. Dillow*, Case No. 1:17-cv-196, 2018 WL 3825894 (S.D. Ohio Aug. 10, 2018) (summary judgment

---

[3] Oleoresin Capsium pepper spray ("OC spray") is a chemical agent used by corrections officers employed by the Ohio Department of Rehabilitation & Correction. (*See* Doc. 38-1, DPCS OC Spray in Use of Force Continuum).

granted on claims that prison officials deployed pepper spray and conducted a cell search in retaliation for plaintiff's history of filing institutional complaints); *McDougald v. Esham*, Case No. 1:16-cv-497, 2018 WL 1010214 (S.D. Ohio Feb. 21, 2018) (summary judgment granted on claims that prison officials used excessive force in spraying plaintiff with pepper spray on two occasions, and denied him medical treatment following the exposure); *McDougald v. Eaches*, Case No. 1:16-cv-900, 2018 WL 3966245 (S.D. Ohio Aug. 17, 2018) (summary judgment granted on First and Eighth Amendment claims relating to use of pepper spray and alleged denial of decontamination); *McDougald v. Dillow*, Case No. 1:16-cv-1099, 2018 WL 3676084 (S.D. Ohio Aug. 2, 2018) (summary judgment granted on First and Eighth Amendment claims relating to use of pepper spray and alleged refusal to provide decontamination); *McDougald v. Erdos*, Case No. 1:17-cv-95, 2018 WL 3772181 (S.D. Ohio Aug. 9, 2018) (summary judgment granted on Eighth and Fourteenth Amendment claims relating to use of pepper spray and alleged refusal of medical attention and decontamination); *McDougald v. Bear*, Case No. 1:17-cv-124, 2019 WL 652501 (S.D. Ohio Feb. 15, 2019) (granting summary judgment on claim that defendants used excessive force and were deliberately indifferent to his medical needs in pepper spray incident); *McDougald v. Erdos*, Case No. 1:19-cv-107 (Doc. 2, R&R filed Feb. 28, 2019, denying motion to proceed *in forma pauperis* on Eighth Amendment claims involving alleged use of pepper spray on August 7, 2017[4] and four other dates); *McDougald v. Smoot*, Case No. 1:19-cv-50, 2019 WL 955030 (S.D. Ohio Feb. 27, 2019) (R&R recommending denial of *in forma pauperis* status for claims alleging use of pepper

---

[4] Of note, this complaint includes identical allegations to those contained in the above-captioned case; that Plaintiff was sprayed on August 7, 2017 "with an excessive deadly amount of OC spray 154 grams…." (Doc. 1-1 at 3).

spray and failure to provide medical attention on numerous occasions); *McDougald v. Bear*, Case No. 1:18-cv-498, 2019 WL 954748 (S.D. Ohio Feb. 27, 2019) (dismissal of pepper spray claim due to "three strikes" history). In other cases, the use of pepper spray and failure to decontaminate or provide medical attention is included as one of several Eighth Amendment claims. *See McDougald v. Clagg*, Case Nos. 1:18-cv- 93 and Case No. 1:18-cv-135 (consolidated).

Notwithstanding the similarity of these cases, the undersigned takes seriously this Court's obligation to examine the facts and evidence presented in each case on its own merits. In other words, the undersigned does not assume that because Plaintiff has made such similar claims in the past, he is "crying wolf" in this case, nor does the undersigned assume that "where there is smoke, there is fire." Rather, the undersigned takes judicial notice of the prior similar cases because, examining closely the well-supported motion for summary judgment filed in *this* case, the Court's prior legal analysis applies equally to the facts presented here.

## B. Findings of Fact

On August 7, 2017 at approximately 6:40 p.m., Plaintiff began beating and banging on his cell. Four correctional officers reported to Plaintiff's cell in response to the disturbance that Plaintiff was causing in his cell block area. (*See* Declarations of Defendants Bauer, Prater, Fri,[5] and Eaches at Docs. 36-2 at ¶4, 36-3 at ¶4, 36-4 at ¶4, 36-5 at ¶4). Defendants observed Plaintiff holding unknown items while on Mental Health Observation and ordered him to put his gown on so that he could be handcuffed for a strip search. (*Id.*) After a strip search, Defendant Fri discovered that the items were an ink

---

[5]In his answer, the Defendant identified as "Fry" corrected the spelling of his surname to "Fri."

pen, a scribe, and an envelope. (Doc. 36-2 at ¶¶5-6; Doc. 36-3 at ¶5, Doc. 36-4 at ¶6)

Defendants returned Plaintiff to his cell after the search, but Plaintiff soon began to scream and beat on his cell front again in an attempt to encourage or incite other inmates to throw items on to the range, in order to go on constant watch status. (Doc. 36-2 at ¶7; Doc. 36-3 at ¶7; Doc. 36-4 at ¶8). In order to help quell the disturbance, Lt. Bauer requested permission from the on-shift Captain to remove Plaintiff from his cell and to relocate him from "J-Block" to a different cell block ("D-Block"). (Doc. 36-2 at ¶8; Doc. 36-3 at ¶8). After permission was granted, Defendants took steps to begin moving Plaintiff, including requiring him to wear a spit sock that would prevent him from spitting on the officers. (Doc. 36-3 at ¶9; Doc. 36-5 at ¶8).

Officers Fri and Prater placed Plaintiff in an escort technique. (Doc. 36-2 at ¶9; Doc. 36-3 at ¶10, 12; Doc. 36-4 at ¶10-12; Doc. 36-5 at ¶9). Plaintiff physically resisted transport and attempted to go "dead weight" during the escort. (*Id.*) Once the officers arrived with Plaintiff at an elevator, due to statements made by Plaintiff at that time, Lt. Eaches began recording Plaintiff with a handheld camera until the officers and Plaintiff arrived at the strip cage. (Doc. 36-2 at ¶10; Doc. 36-5 at ¶10). Because institutional policy prohibits videotaping strip searches, Defendant Eaches turned off his handheld camera once they arrived.

Plaintiff was placed in the strip out cage and Defendant Fri removed his restraints. Once unrestrained, however, Plaintiff quickly removed the spit sock from his head and threw it at Officer Fri, striking him in the chest with it, and spitting on Fri's left arm. (Doc. 36-2 at ¶12-13; Doc. 35-3 at ¶14-15; Doc. 36-4 at ¶14-15; Doc. 36-5 at ¶12-13). Spitting is an institutional rule violation under O.A.C. 5120-9-06(C)(6). (Doc. 36-3 at ¶16; Doc.

36-4 at ¶16). Lt. Bauer reacted quickly to Plaintiff's action by deploying 154 grams of OC spray in a single burst to Plaintiff's facial area.

Plaintiff was offered a decontamination shower but rejected that offer. (Doc. 36-2 at ¶17). Plaintiff disputes that account, alleging that he "informed all officers…and medical nurse when she arrived I was in need of medical attention and decontamination and I was denied and left in a dry cell and my entire body was drenched in a large quantity of OC spray…." (Doc. 38 at 9). The officers attest that they observed Plaintiff using his cell sink to rinse his eyes out. (Doc. 36-2 at ¶18; Doc. 36-5 at ¶18). Plaintiff argues that the officers' version of events is "fabricated." (Doc. 38 at 7). According to Plaintiff, photographs depict him "choking, gag[g]ing, grasping for air, hunched over, in a cell with the water turned off." (*Id.*)

A Use of Force investigation was completed, and Defendants submitted all related documentation from that investigation, including the Supervisor's Use of Force Summary, five incident reports, the Plaintiff's statement, 4 medical exam forms (three of staff, and one of Plaintiff), a report of security control, 2 conduct reports, photographs and videotape. (*See* Doc. 36-6). SOCF medical staff visited Plaintiff at approximately 7 p.m.,[6] but observed no visible injuries other than those attributed to OC spray. (Doc. 36-4 at ¶19). Records reflect that, upon visual examination immediately following the administration of OC spray, Plaintiff had "visible irritation observed to facial area; redness to skin, bilat[eral] watery eyes, and clear nasal drainage." (Doc. 36-6 at 13). However,

---

[6]Plaintiff disputes the account of Defendants that the nurse visited at 7 p.m., alleging that the medical log book reflects that OC spray was deployed sometime after 6:52 pm., but that Nurse Rayburn did not arrive on the cell block for her regular rounds until 7:16 pm. (Doc. 38-1 at 8). The undersigned does not agree that the records are inconsistent, as the log book reflects "rounds" as opposed to a nurse visit to Plaintiff following a use-of-force incident. Even assuming that the records are indicative of a 16 minute inconsistency, however, the undersigned would not find the minor discrepancy to be material given the relatively minor effects of OC spray.

Plaintiff had no other injuries. Plaintiff was removed from the area of OC contamination, provided a clean gown and blanket and offered a decontamination shower, which he refused. He was advised to flush the irritated areas with cool running water and to follow up as needed. (*Id.*) There is no evidence that he sought further medical treatment.

### C. Defendants' Motion for Summary Judgment

### 1. Plaintiff Cannot Show Excessive Force

All four Defendants are entitled to summary judgment for many of the same reasons stated in other OC spray cases involving Plaintiff; namely, that the undisputed facts reflect that the use of OC spray was appropriate and proportional to Plaintiff's disruptive behavior. The evidence of record shows that Defendant Bauer deployed his OC spray in direct response to Plaintiff's actions, which included throwing his spit sock and spitting on an officer. Both actions constitute violations of institutional rules. The Eighth Amendment prohibition against cruel and unusual punishment prohibits only the deliberate use of force by a prison official that is "excessive and unjustified." *Cornwall v. Dahlberg*, 963 F.2d 912, 915 (6th Cir. 1992) (internal quotation marks and additional citation omitted). By contrast, "the good faith use of physical force in pursuit of valid penological or institutional goals will rarely, if ever, violate the Eighth Amendment." *Parris v. Johnson*, 800 F.2d 600, 604 (6th Cir. 1986).

All of the evidence supports the Defendants' account. In opposing Defendants' properly supported motion for summary judgment, Plaintiff must "designate specific facts in affidavits, depositions, interrogatories, or other factual material" from which a reasonable jury could find in his favor. *Maston*, 832 F. Supp.2d at 849. He "cannot rest on the mere allegations of the pleadings." *Id.* Defendants aver that the OC spray was

used to restore order, to protect Officer Fri and other officers in the vicinity, and to prevent Plaintiff from further spitting or otherwise attempting to assault nearby officers. (Doc. 36-2 at ¶16; Doc. 36-3 at ¶17; Doc. 36-4 at ¶17; Doc. 36-5 at ¶15). In response, Plaintiff merely asserts that the OC spray was used "as a punitive measure." (Doc. 38 at 9).

Plaintiff's version of events is so blatantly contradicted by all other evidence such that no reasonable jury could believe it. *See Scott v. Harris*, 550 U.S. 372, 380 (2007); *accord McDougald v. Bear*, Case No. 1:17-cv-124 (Doc. 49, R&R recommending summary judgment where all record evidence corroborated Defendants' account that McDougald was yelling and attempting to spit on correctional officer when officer deployed OC spray to plaintiff's face in effort to gain control, and medical records showed no acute distress and no serious injury); *McDougald v. Erdos*, Case No. 1:17-cv-95 (Doc. 39 at 9, R&R "the evidence establishes that the use of pepper spray by Defendant Dyer was a reasonable and minimal response to a noncompliant McDougald"); *McDougald v. Esham*, Case No. 1:16-cv-497 (Doc. 70, R&R recommending summary judgment where Plaintiff failed to submit sufficient evidence to create a genuine issue of fact as to whether use of pepper spray was reasonable or whether defendants denied him proper medical treatment following use of spray).

In addition, the record reflects that Plaintiff suffered only the transient and relatively minor discomfort and irritation that is an intended effect of the use of OC spray. The medical record reflects "visible irritation" to Plaintiff's skin, "watery eyes, and clear nasal drainage" within the first 20 minutes following the administration of the pepper spray, but no permanent or other type of "serious" injury. There is no evidence that the use of OC spray ordinarily presents any substantial risk of harm, and Plaintiff has presented no

evidence of any particular sensitivity. The medical treatment for the minimal injury that Plaintiff sustained consisted of being offered a decontamination shower, in order to wash his skin and/or rinse out his eyes. In short, Plaintiff has failed to present evidence creating a genuine issue of fact on the objective element of his claim, because no reasonable jury could conclude that the "pain inflicted" by Defendant Bauer was "sufficiently serious" to offend "contemporary standards of decency." *Cordell v. McKinney*, 759 F.3d 573, 585 (6th Cir. 2014) (internal quotation marks and additional citation omitted); *McDougald*, Case No. 1:17-cv-124, Doc. 49 at 13 ("Plaintiff [McDougald] has failed to present medical evidence showing he experienced respiratory distress or that he had a medical condition making him particularly vulnerable to the use of pepper spray, as opposed to merely experiencing discomfort "in the ordinary fashion of persons exposed to pepper spray," quoting *Jennings v. Mitchell*, 93 Fed. Appx. 723, 724 (6th Cir. 2004)); *see also McDougald v. Eaches*, Case No. 1:16-cv-900, Doc. 58 at 9 (noting that the absence of serious injury after use of pepper spray "informs the inquiry on the amount of force used," and that the nurse had noted red and watering eyes, a flushed face, and clear nasal drainage, but no other more significant injuries, reflecting a reasonable and proportional use of force; *Id.*, at 10 (no reasonable jury could conclude that the "pain inflicted" through use of OC spray was "sufficiently serious" to satisfy objective element of Eighth Amendment claim).

Plaintiff cites to *Williams v. Curtin*, 631 F.3d 380, 384 (6th Cir. 2011) for the proposition that trial courts should focus on the "nature of the force rather than the extent of the injury." This Court has used the same quotation in many of Plaintiff's prior cases, in which summary judgment has been granted on similar pepper spray claims. As the Court previously has explained, "[t]he absence of a serious injury is nonetheless relevant

as a factor that suggests whether the use of force may 'plausibly have been thought necessary' in a given situation." *Wilkins v. Gaddy*, 559 U.S. 34, 37, 130 S. Ct. 1175, 1178 (2010) (quoting *Hudson v. McMillian*, 503 U.S. 1, 7 (1992)).

As in Plaintiff's prior cases, *Williams v. Curtin* is easily distinguished. There, the Sixth Circuit was evaluating the limits of *sua sponte* dismissal under the "frivolousness" standard established by the Prison Litigation Reform Act. The appellate court held that the plaintiff had presented a non-frivolous excessive force claim, sufficient to survive initial screening under 42 U.S.C. § 1997e, when he alleged that he politely and fully complied with all orders, but that an "assault team" nevertheless entered his cell and sprayed him with a chemical agent. Plaintiff's complaint in this case was permitted to proceed under the same PLRA screening standards. However, now that this case has progressed to summary judgment, Plaintiff must do more than merely allege that he did nothing wrong and that the use of pepper spray was punitive; he must cite to sufficient record evidence to create a genuine issue of material fact. As in his prior cases, McDougald has failed to come forward with sufficient evidence to overcome the Defendants' well-supported motion for summary judgment.

Plaintiff's citation to cases holding that the use of chemical agents used as a punitive measure rather than a control advice can violate the Eighth Amendment is similarly unavailing, because the record is undisputed that the use of OC spray by Defendant Bauer was in direct response to Plaintiff's rule violations, and therefore was used as a control device. This Court and others repeatedly have held that the use of pepper spray in response to an inmate who is disruptive, aggressive, and spitting at corrections officers is not disproportionate to the need to control an unruly inmate and

does not satisfy the subjective component of an Eighth Amendment claim. *See Jennings*, 93 Fed. Appx. at 725; *Caldwell v. Moore*, 968 F.2d 595, 600 (6th Cir. 1992) (collecting cases); *Easley v. Little*, 2016 WL 4006676 at *7 (S.D. Ohio 2016) ("A short burst of pepper spray is not disproportionate to the need to control an inmate who has failed to obey an order."); *McDougald v. Bear*, Case No. 1:17-cv-124 (R&R filed Feb. 15, 2019) (collecting cases); *McDougald v. Erdos*, 1:17-CV-95, (R&R filed 8/9/18 at 9-10 (same)); *McDougald v. Dillow*, Case No. 1:16-cv-1099 (R&R filed 8/2/18 at 7, 10-11 (same)); *McDougald v. Eaches*, Case No. 1:16-cv-900 (R&R filed 8/17/18 at 10 (same)).

Plaintiff alternatively argues that the amount of OC spray deployed in this case – 154 grams - was a "deadly amount," or at least was an "excessive" amount, because officers are instructed to deploy OC spray only in short one half to one-second bursts. Contrary to Plaintiff's assertion, the use of OC spray is not considered to be use of a deadly force. *See, e.g., Williams v. Warden*, 2013 WL 1281628 at *2, 2013 U.S. Dist. LEXIS 43645 at *6 (S.D. Ohio Mar. 27, 2013) (referring to "less-than lethal weapons" including OC spray). In fact, the referenced institutional policy[7] does not contain <u>any</u> restrictions on the number of grams of OC spray that can be dispensed, nor does it contain limitations on length of time that the trigger on a can of OC spray may be depressed in the midst of an incident requiring its use.

Although there appears to be no formal "policy" on point, Plaintiff also cites to discovery responses submitted in another case, Case No. 1:16-cv-497. The attached page has not been authenticated and contains only questions and responses numbered

---

[7] Plaintiff has attached a copy of a 4-page Policy entitled "DPCS OC Spray in Use of Force Continuum" in support of his cross-motion for summary judgment. (*See* Doc. 38-1 at 1-4).

9-11, signed by Assistant Attorney General George Horvath.[8]  Discovery responses in one case may not automatically used as evidence in another case.  Despite those caveats, one of the interrogatories asks about the "recommended quantity use of OC spray during a use of force encounter with a prisoner while he's in his cell?"  The response reads:

> I have limited personal knowledge of the information requested, however, I have made inquiries to institutional staff in an effort to respond completely. Based upon my belief and understanding…Employees are instructed to deploy .5 to 1 second bursts, evaluate situations and deploy additional .5 to 1 second bursts until situation is controlled.

(Doc. 38-1 at 28).  Another response about the "prohibited quantity use of OC spray" states: "There is no limit on the quantity to be used to control a situation."  (*Id.*).

The quantity of OC spray used does not preclude summary judgment on the record presented, even considering Plaintiff's additional hypothesis that the amount of OC spray was excessive.  First, Plaintiff has not demonstrated that Defendant Bauer actually violated any institutional "policy," or that any policy proscribes the quantity of spray or the length of time that the trigger may be depressed.  Even if the unauthenticated interrogatory response from an unknown witness in another case is accepted as probative evidence, the most it reflects is the respondent's "belief" concerning the manner in which staff are "instructed" to deploy OC spray, with "no limit on the quantity."  Second, there is no evidence concerning the amount of time during which Officer Bauer actually dispensed the OC spray – whether a half second, one second, or longer.  Even assuming multiple facts not in existence here (that Defendant Bauer was "instructed" in the manner described, that the canister operated as intended, and that it took more than 1 second for

---

[8] Counsel may not ordinarily testify as a witness.  However, the responses may have been signed on behalf of an unknown defendant, possibly Warden Erdos, who is not a defendant in this case.

Defendant Bauer to dispense 154 grams of OC spray), no authority holds that the violation of an instructional guideline equates to a violation of the Eighth Amendment. In short, the record leaves no doubt that the deployment of OC spray by Bauer in this case fell well within the constitutional limits of the Eighth Amendment.

Defendant Fri also is entitled to summary judgment, because Plaintiff has failed to show that he used force in excess of the Eighth Amendment. Plaintiff alleges that Fri bent his wrists and fingers during the escort, and subsequently kicked him after Defendant Bauer deployed OC spray. However, there is no evidence at all to support these allegations. Plaintiff has offered no contemporaneous documents, copies of grievances, or any other documentation that suggests that he ever reported being physically kicked, or complained of his wrists and fingers being bent, or of any injury other than the use of OC spray. No other officer witnessed any use of force other than the use of OC spray and none of the declarations or other evidence corroborate Plaintiff's allegation that Officer Fri kicked him. According to all testimony and documentary evidence, Lt. Bauer alone used force. Defendant Fri has affirmatively testified that he did not use any force against Plaintiff. The medical record also fails to note any bruises or other injury reported by Plaintiff or observed by medical staff.

Plaintiff generally asserts that Nurse Rayburn falsified the medical record but provides no support or evidence for his wholly conclusory assertion.[9] "When opposing parties tell two different stories, one which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt the version of the facts for

_____

[9] Again, the undersigned notes the similarity of these allegations with prior allegations made by Plaintiff in multiple cases, including but not limited to pepper spray cases. *See e.g., McDougald v. Eaches*, Case No. 1:16-cv-900, Doc. 58 at 14 (Plaintiff's assertion that he was not decontaminated or treated by Nurse Rayburn and that she falsified her medical exam report was not sufficient to overcome summary judgment).

purposes of ruling on a motion for summary judgment." *Scott*, 550 U.S. at 380. Defendant Fri is entitled to judgment as a matter of law because the record flatly contradicts Plaintiff's allegation that Defendant Fri kicked him (or used any force at all) during the incident. *Accord McDougald v. Erdos*, Case No. 1:17-cv-95 (R&R filed 8/9/18, Doc. 39 at 8, granting summary judgment on Plaintiff's claims that use of OC spray was excessive force, where Plaintiff "failed to point to direct evidence, beyond his own assertions to contradict the evidence presented by Defendants."); *McDougald v. Dillow*, Case No. 1:16-cv-1099, Doc. 55 at 9 and 12 ("[O]ther than asserting that Defendants' version of the events [was] false Plaintiff failed to present any evidence to rebut Defendants' well-supported version of the events.").

Unlike Defendants Bauer and Fri, Plaintiff has not so much as alleged that either of the remaining two Defendants, Prater and Eaches, used any force against him. Unsurprisingly, the undisputed record confirms that neither of these Defendants employed any force. Thus, both Prater and Eaches also are entitled to judgment as a matter of law on the excessive force claim.

## 2. No Deliberate Indifference to a Serious Medical Need

Plaintiff also cannot satisfy either the objective or subjective prong of a claim of deliberate indifference to his serious medical need. The record reflects that Plaintiff suffered from the temporary effects of OC spray, but refutes Plaintiff's contention that any of the four Defendants exhibited deliberate indifference to a serious medical need. Again, the sole treatment for the deployment of pepper spray is a decontamination shower. The record reflects that Plaintiff was offered a shower but refused.[10] The record further

---

[10] Although Plaintiff suggests that the medical records were falsified, this Court need not accept that conclusory allegation in the absence of any evidence.

reflects that medical staff were summoned to examine Plaintiff approximately 20 minutes after Plaintiff was sprayed. The Medical Exam Report reflects that Plaintiff's breathing was "easy and unlabored" at 7 p.m., and that he was provided the following treatment:

> Pt removed from area of OC contamination, clean suicide gown and blanket given and decontamination shower offered per security. Advised to flush irritated areas with cool running water, pat irritated areas dry and not rub. (clean paper towels given), rinse mouth with water, blow nose to clear nasal cavity, do not touch uncontaminated areas with contaminated hands or items and to report any changes to staff as needed or follow up with NSC."

(Doc. 36-6 at 13; *see also* Doc. 38-1 at 25). The same record reflects that Plaintiff continued to be monitored on Mental Health observation. (*Id.*) No additional medical records reflect any other complaints or requests for follow-up care related to the August 7 incident.

Plaintiff makes much of the photographs placed in evidence by Defendants, and re-filed in support of Plaintiff's own motion for summary judgment. According to Plaintiff, the photographs evidence the fact that Plaintiff was "choking, gag[g]ing, grasping for air, hunched over, in a cell with the water turned off." (Doc. 38 at 7). The undersigned has closely examined the referenced still photographs, which are consistent with the medical report and with Plaintiff's account of his immediate discomfort following the administration of OC spray. However, neither the photographs nor any other evidence supports Plaintiff's allegation that someone (whether a named Defendant or not) turned off the water in his cell. And the Defendants have averred that they observed Plaintiff rinsing his face in the sink soon after the incident. Plaintiff has failed to cite to any credible evidence of record that conflicts with the evidence submitted by Defendants: that Plaintiff was offered a decontamination shower, but refused, that he was provided with clean clothing, and that medical authorities determined no additional treatment was required but advised

him to wash his skin and rinse his eyes as needed. The absence of any record suggesting that Plaintiff sought further medical treatment from anyone, at any time, for injuries pertaining to the August 7 administration of OC spray further undercuts Plaintiff's argument. Thus, Plaintiff has failed to provide any evidence to support his claims that any of the four named Defendants in this lawsuit subjectively perceived a serious medical need but either failed to attend to that need or took affirmative steps to deny Plaintiff the medical treatment he needed.

Objectively, despite the (intentional) immediate impact of the OC spray, there is no evidence that it caused anything more than temporary and transient discomfort. Again, the Court takes note of strikingly similar and conclusory allegations made in Plaintiff's prior cases, in which Plaintiff also failed to come forward with evidence that would create a genuine issue of material fact in opposition to motions for summary judgment:

> Plaintiff claims that after officers sprayed him with pepper spray, he was left in an unventilated cell with the door shut gasping for air and choking. …Similar to his claim for excessive force, Plaintiff simply asserts that Defendants gave false statements on the incident reports as well as their answers to Plaintiff's interrogatories. As such, Plaintiff failed to present any evidence that he was denied proper medical care and/or that Defendants were deliberately indifferent to his serious medical needs….

> To the contrary, defendants have provided ample evidence that Defendants offered decontamination (wash-up) and medical care to McDougald….

(Case No. 1:17-cv-95, Doc. 39 at 11); *see also id.*, at 10 (granting summary judgment based on record evidence that McDougald was offered decontamination and was seen by a nurse shortly after he was sprayed); *McDougald v. Eaches*, Doc. 58 at 12-14 (R&R filed 8/17/18 holding that Defendants were entitled to summary judgment on pepper spray claim, based upon evidence that plaintiff was offered decontamination and was seen by a nurse shortly after being pepper spray, and failure of plaintiff to establish that "any

17

medical diagnosis made him particularly vulnerable to chemical agent exposure" or any "serious medical need beyond the normal effects associated with pepper spray exposure").

### 3. Plaintiff Cannot Prove a Failure to Protect Claim

All four Defendants also are entitled to summary judgment on Plaintiff's "failure to protect" claim. The Eighth Amendment requires prison officials to "take reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan*, 511 U.S. 825, 832, 114 S. Ct. 1970 (1994). To establish an Eighth Amendment, claim against prison officials based upon their failure to protect him from attack by other correctional officers, Plaintiff would be required to present evidence showing that the officers' conduct amounted to "deliberate indifference" to a known risk of harm. *Id.*, 511 U.S. at 837.

For the reasons discussed, Plaintiff cannot make this showing. As to the subjective element, there is no evidence that any of the Defendants knew or should have known that Plaintiff faced an excessive risk of harm during the incident at issue, whether during the escort, during Bauer's reactive deployment of OC spray, or immediately following the use of OC spray. In truth, there was no risk of any harm to Plaintiff other than that which Plaintiff himself created: the risk of reasonable and proportional disciplinary action taken in reaction to Plaintiff's rule violations. There is also no evidence that any real harm occurred, or that Plaintiff suffered anything more than *de minimis* and transient discomfort.

### 4. Qualified immunity

Because Plaintiff has failed to show any violation of his Eighth Amendment rights, all defendants are also entitled to qualified immunity. *See Phillips v. Roane County*, 534

F.3d 531, 539 (6th Cir. 2008) (stating that in order to determine whether government officials are entitled to qualified immunity, the court must first determine whether there was any constitutional violation). In the unlikely event that a reviewing court were to determine that the record presented establishes that one or more of the Defendants committed some violation of Plaintiff's constitutional rights, the Defendants would still be entitled to qualified immunity because there is no clearly established law that prohibits correctional officers from using OC spray in a reactive fashion as occurred in this case, following an inmate's commission of rule violations. *Thompson v. Joseph*, 2014 WL 1685918 at *7 (S.D. Ohio Apr. 29, 2014) (R&R), adopted at 2014 WL 2172894 (S.D. Ohio May 23, 2014) (qualified immunity granted where "no reasonable officer would have understood that it violated the Eighth Amendment to reactively aim chemical spray at Plaintiff in his cell for less than two seconds…, in order to force a threatening inmate to retreat and restore order"); *McDougald v. Dillow*, Case No. 1:16-cv-1099, Doc. 55 at 16 (R&R recommending that Defendants be granted qualified immunity in light of Plaintiff's failure of to show violation of any clearly established constitutional right).

### D. Plaintiff's Cross-motion for Summary Judgment

In his cross-motion for summary judgment, Plaintiff continues to argue that the deployment of 154 grams of spray in a single "big burst" constituted a "deadly amount of OC spray" that necessarily violates the Eighth Amendment. (Doc. 38 at 4). In a supplemental motion to amend his motion for summary judgment, Plaintiff asks "to change the wording from deadly amount of OC spray to the use of excessive amount to properly describe the malicious intent of officers…." (Doc. 52 at 1). For the reasons discussed above, the use of OC spray by Defendant Bauer does not constitute force or

excessive force and does not violate the Eighth Amendment on the record presented.

### E. Plaintiff's Motion for Default Judgment

On July 15, 2019, Plaintiff filed a motion seeking a default judgment as a sanction for Defendant Bauer's alleged failure to file responses to a set of interrogatories. However, Plaintiff previously moved to compel the same responses, and that motion was granted in part on July 11, 2019. (*See* Docs. 37, 39). In compliance with the Court's Order, Defendants filed a Notice on July 17, 2019 indicating that Defendant Bauer had supplemented his prior discovery responses. (Doc. 43). Therefore, no discovery sanctions are appropriate, and Pliantiff's motion for default judgment should be denied as moot.

### IV. Conclusion and Recommendations

For all the reasons stated, **IT IS RECOMMENDED THAT** Defendants' motion for summary judgment (Doc. 36) be **GRANTED**, that Plaintiff's motions (Docs. 38, 40, 52) be **DENIED**, and that this case be dismissed with prejudice and closed.

*s/Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

JERONE MCDOUGALD,                                          Case No. 1:18-cv-80

     Plaintiff,

                                      Barrett, J.
     vs.                                                           Bowman, M.J.

JEREMY EACHES, *et al.,*

     Defendants.


**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** after being served with a copy thereof.  That period may be extended further by the Court on timely motion by either side for an extension of time.  All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections.  A party shall respond to an opponent's objections within **FOURTEEN DAYS** after being served with a copy of those objections.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).